UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION
www.flmb.uscourts.gov

In re:

RITCHEY'S TRUCK REPAIR, INC.,

     Debtor.

_____/

Subchapter V, Chapter 11

Case No. 8:26-bk-04988-CED

**OBJECTION OF TRUCKCO, LLC AND SIGNAL MANAGEMENT
GROUP, INC. TO DEBTOR'S APPLICATION TO EMPLOY AND
RETAIN ARCHIT SHAH OF CADENCE CONSULTING SERVICES LLC
AS CHIEF RESTRUCTURING OFFICER, AND REQUEST FOR HEARING
[ECF NOS. 53, 71]**

**PRELIMINARY STATEMENT**

1.     TruckCo, LLC ("TruckCo"), the plaintiff in the State Court Action defined below and a creditor scheduled by the Debtor, and Signal Management Group, Inc. ("Signal"), the original buyer under the Stock Purchase Agreement defined below and a defendant in the related adversary proceeding (together, the "Objectors"), as parties in interest under 11 U.S.C. § 1109(b), object to the Debtor's Application, Pursuant to Sections 105(a) and 363 of the Bankruptcy Code, for Authorization to Employ and Retain Archit Shah of Cadence Consulting Services LLC as Chief Restructuring Officer, Effective as of the Petition Date [ECF No. 53] (the "Application"), as supplemented by the Supplemental Declaration of Archit Shah [ECF No. 71] (the "Supplemental Declaration"). The Objectors request a hearing.

2.     The Objectors do not oppose the Debtor's retention of a chief restructuring officer to perform the core financial oversight services enumerated in the engagement agreement at the disclosed hourly rate of $300.00. This Objection is directed to two things only: the $55,000 "Deferred Restructuring Fee" (the "Fee") and the form of order tendered with the Application.

3.	The Objection rests on four independent grounds. **First**, the proposed order does not conform to the engagement agreement nor to the Supplemental Declaration: it approves the Fee without either of the limitations the Supplemental Declaration concedes, and it grants the proposed CRO transaction authority that the engagement agreement itself withholds. **Second**, the Fee as written is unbounded: it contains no minimum transaction threshold, no exclusion for partial or piecemeal dispositions, and no definition of the triggering sale, and its flat structure pays the same $55,000 whether one asset or the entire enterprise is sold. **Third**, the Application is premature: it asks the Court to approve transaction compensation before the Debtor has proposed any sale, identified any property to be sold, disclosed any transaction structure, or completed the financial disclosures that this Court's process and an outstanding state court production order require. **Fourth**, the applicant has not carried its burden to show that the Fee would produce a benefit to the estate, because the Application does not identify what estate property any contemplated transaction would involve or what consideration would reach creditors.

4.	The Objectors propose a narrow alternative, set out in the proposed order attached as Exhibit A: approve the retention for the enumerated core services at the hourly rate, subject to fee application; disapprove the Fee, without prejudice to a separate application under 11 U.S.C. §§ 328(a) and 330 filed after a motion to sell property of the estate, if any, is filed and heard; and conform the order's authority language to the engagement agreement the Debtor itself signed.

## BACKGROUND

### A.	The State Court Record

5.	On October 22, 2024, Signal, as buyer, Bruce A. Ritchey and Karen A. Ritchey, as Trustees of their Joint Revocable Living Trust (the "Trust"), as seller, and the Debtor entered into a Stock Purchase Agreement (the "SPA") for the sale of the outstanding stock of the Debtor

for $3,000,000. Signal assigned its rights under the SPA to TruckCo on December 10, 2024. The transaction did not close, and litigation followed in *TruckCo, LLC v. Ritchey*, No. 2025-CA-001921 (Fla. 10th Jud. Cir., Polk County) (the "State Court Action").

6.      On April 22, 2026, the state court entered partial summary judgment determining the seller's failure to close, and finding the financial statements furnished with the SPA "inaccurate as of the date of execution, as Defendants have acknowledged".  That order was recorded on April 27, 2026, at Instrument No. 2026098832, Official Records Book 13972, Pages 0898 to 0901, of the public records of Polk County, Florida.

7.      Six days before that judgment, following an April 9, 2026 hearing, the state court granted TruckCo's motion to compel, ordering the defendants there, including the Debtor, to produce all documents requested in TruckCo's Second Request to Produce, Requests 1 through 7, "in their entirety," for the period from before the failed closing "through the end of the first quarter in 2026," and finding the compelled records "discoverable and necessary for the Plaintiff to determine its election of remedies." Production was ordered by April 15, 2026; the written order was entered April 16, 2026. Compliance with that order remains incomplete. The plaintiffs' May 6, 2026 notice of noncompliance in the State Court Action identifies the Debtor's QuickBooks accounting records among the compelled materials not produced, and those records remain outstanding today.

**B.      The Bankruptcy Record and the Sequence of the Application**

8.      The Debtor filed its voluntary Subchapter V petition on June 10, 2026 (the "Petition Date") and operates as debtor in possession under 11 U.S.C. § 1184.

9.      The engagement agreement between the Debtor and Cadence Consulting Services LLC (the "Agreement") is "entered into as of June 10, 2026" and was executed for the Debtor by

Bruce Ritchey.[1] The compensation structure now before the Court was therefore fixed on the Petition Date itself, before any schedule, statement, report, or disclosure existed in this case.

10.     Also on the Petition Date, the Debtor filed its list of the twenty largest unsecured claims [ECF No. 2], executed by Mr. Ritchey under penalty of perjury [ECF No. 4]. That list identifies nineteen non-insider creditors other than TruckCo, holding claims totaling $95,708.20. The two largest are the Debtor's own defense counsel in the State Court Action: Valenti Law ($19,814.00) and Ted W. Weeks IV, PA ($17,520.19). Excluding those two firms, the entire scheduled non-insider trade debt totals $58,374.01, and the largest single trade claim is $11,954.93. TruckCo is listed at $0.00.

11.     The Debtor's schedules and statements were filed on July 13, 2026, on an extended deadline [ECF No. 59]. Schedule E/F lists TruckCo's claim as "Unknown" and does not mark it disputed.

12.     The Application was filed on July 7, 2026, six days before the schedules, on fourteen day negative notice, tendering a proposed order to be entered "without a hearing" if no response was filed. This Objection is that response.

13.     The meeting of creditors under 11 U.S.C. § 341 was convened on July 20, 2026 [see ECF No. 23]. The Supplemental Declaration followed on July 21, 2026, "in response to concerns raised regarding the proposed success fee," three days before the response deadline. In the related adversary proceeding, No. 8:26-ap-00201-CED, verified asset disclosures are to be served by July 27, 2026.

---

[1] The Agreement's signature block identifies Mr. Ritchey's title as "Owner." The Debtor's List of Equity Security Holders and Corporate Ownership Statement [ECF Nos. 5, 6] identify the holders of the Debtor's equity as the Trust and Brett Vogeler.

14. No motion to sell property of the estate has been filed. No transaction, transaction structure, marketing timeline, bidding procedure, purchaser class, or property to be sold has been identified in any filing in this case.

## C. The Operative Documents

15. The Fee appears in four places in identical, unqualified form: the Agreement, Exhibit A to the Agreement, paragraph 11 of the Shah Declaration, and paragraph 11 of the Application. Each provides that the Debtor will pay Cadence:

> a deferred restructuring fee (the "Deferred Restructuring Fee") in the amount of $55,000 upon the closing of a sale of the assets or a sale of the equity of the Company pursuant to Section 363 of the Bankruptcy Code or a confirmed Chapter 11 plan.

16. The Agreement contains no definition of the triggering sale, no minimum transaction size, no requirement that a sale involve all or substantially all assets, no proration, and no exclusion for ordinary course or partial dispositions. Section 13.2 of the Agreement provides that it "may be amended only by a written instrument signed by both parties."

17. As to the proposed CRO's role and authority, the Agreement provides that "[t]he CRO role is advisory and consulting in nature" and that the consultant "does not assume fiduciary duties to creditors or third parties except as expressly required by applicable law" (Agreement § 1.1); that the CRO will "report solely and directly to the Debtor's board" (Shah Decl. ¶ 7(a)); and, in the CRO Authority Matrix at Exhibit B, that "[a]sset sales or material dispositions," new borrowing, approval of the formal restructuring plan, communications to creditors, and execution of contracts each require client authorization, that the CRO "has no unilateral signing authority," and that even disbursements over $2,000 require client concurrence. The client may terminate the engagement for convenience on thirty days' notice (Agreement § 8.1).

18. The order tendered with the Application does three things the Application's own record does not support. Paragraph 3 grants the CRO "full authority to act for and on behalf of the Debtor in all aspects of its business and its Chapter 11, Subchapter V case, including any sale of the assets of or equity in the Debtor." Paragraph 4 approves the Fee in its original, unqualified form. Paragraph 6 provides that "[t]o the extent there is any inconsistency between the terms of the Agreement, the Application, and this Order, the terms of this Order shall govern."

19. The Supplemental Declaration then states two acknowledgments found nowhere in the Agreement or the tendered order: "(a) the Proposed Success Fee is not being pre-approved and remains subject to court approval, and (b) the Proposed Success Fee shall not be payable if TruckCo, LLC, Russell Mathews, or Signal Management, Inc. is the sole bidder and successful purchaser of either the Debtor's stock or assets." Supp. Decl. ¶ 2. It describes the services the Fee would compensate as "more akin to those traditionally provided by investment bankers, business brokers, mergers and acquisitions advisors, or similar transaction professionals," including "establishing and populating a data room with relevant materials" and "advertising the sale." Supp. Decl. ¶ 3. Its market comparison "[a]ssum[es] a transaction value of approximately $3,000,000," the SPA purchase price, and computes the Fee at "1.83% of transaction value." Supp. Decl. ¶ 6.

**THE STANDARD AND THE APPLICANT'S BURDEN**

20. The Application invokes 11 U.S.C. §§ 105(a) and 363(b). The Shah Declaration invokes the disinterestedness standard of 11 U.S.C. §§ 101(14) and 327(a). Shah Decl. ¶¶ 17, 18. And the Supplemental Declaration concedes that the Fee "is not being pre-approved and remains subject to court approval." Supp. Decl. ¶ 2(a). Under each of those provisions the burden to establish the terms of employment, and the reasonableness of the compensation sought, rests on the applicant.

21.     Section 328(a) permits employment "on any *reasonable* terms and conditions of employment, including ... on a fixed or percentage fee basis, or on a contingent fee basis." 11 U.S.C. § 328(a) (emphasis added). Reasonableness is the statutory condition, not a formality, and Section 328(a) further provides that a court may later allow compensation different from the approved terms only "if such terms and conditions prove to have been improvident in light of developments not capable of being anticipated at the time of the fixing of such terms and conditions." Terms fixed now are therefore difficult to revisit later, which is itself a reason not to fix transaction terms before the transaction exists.

22.     Section 330 supplies the measure. In determining the amount of reasonable compensation, the Court considers, among other factors, "whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title." 11 U.S.C. § 330(a)(3)(C). And Section 330(a)(4)(A)(ii) is mandatory: the Court "shall not allow compensation for ... services that were not (I) reasonably likely to benefit the debtor's estate; or (II) necessary to the administration of the case."

23.     A transaction fee can be measured against that standard only when there is a transaction to measure. The Application supplies none: no proposed sale, no identified property, no structure, no threshold, and no consideration traced to any creditor. The four grounds that follow are addressed to that record.

**THE PROPOSED ORDER IS INCONSISTENT WITH THE APPLICATION AND THE SUPPORTING DECLARATIONS AND CANNOT BE ENTERED AS PROPOSED**

24.     The record now contains three different versions of the Fee. The Agreement states it without limitation. The Supplemental Declaration adds two limitations by acknowledgment: no pre-approval, and no payment if a named party is the sole bidder and successful purchaser. The tendered order approves the Fee in the unlimited form, contains neither acknowledgment, and

provides in paragraph 6 that the order controls over the Agreement. If the order were entered as tendered, the operative Fee would carry neither of the limitations on which the Debtor's own supplemental record relies.

25.     Nor does the Supplemental Declaration cure the gap on its own. Section 13.2 of the Agreement permits amendment "only by a written instrument signed by both parties." A unilateral acknowledgment in a declaration is not a signed bilateral amendment. As a matter of the contract the Court is asked to approve, the operative Fee remains the unlimited version.

26.     The authority provisions present the same defect in a more consequential form. Paragraph 3 of the tendered order grants the CRO "full authority" over "any sale of the assets of or equity in the Debtor," while the Agreement's own Authority Matrix requires client authorization for asset sales and material dispositions and denies the CRO unilateral signing authority, and Section 4.2 forbids the consultant to bind the client except as the matrix provides. A retention order entered on negative notice should not confer transaction authority that the retained professional's own contract withholds. If the matrix governs, paragraph 3 is inaccurate; if paragraph 3 governs by operation of paragraph 6, the order silently rewrites the engagement it purports to approve. Either way, the order cannot be entered as submitted, and the Objectors request a hearing.

**THE FEE IS UNBOUNDED, AND AS STRUCTURED IT IS NOT REASONABLE**

27.     The Fee matures "upon the closing of a sale of the assets or a sale of the equity of the Company pursuant to Section 363 of the Bankruptcy Code or a confirmed Chapter 11 plan." The words "all or substantially all," standard in transaction fee engagements, do not appear. No minimum, proration, definition, or exclusion appears. At least three readings are available, and nothing in the Agreement forecloses any of them: (a) any sale of any asset under Section 363 matures the full $55,000; (b) a sale of "the equity of the Company," which, as shown below, the

estate does not hold; and (c) a sale effected through a confirmed plan. On reading (a), a single noticed sale of a single piece of equipment matures the entire Fee. A term that the applicant has not bounded is a term the applicant has not carried its burden to justify.

28.     The structure of the Fee compounds the textual defect. Because the Fee is a flat $55,000 regardless of the scale, price, or composition of the triggering sale, the economics reward the fastest, smallest, least contested closing available. The path of least resistance to the Fee is the piecemeal disposition of operating assets, which is also the path of greatest harm to a going concern. The Debtor represents that it "continues to operate its business" (Appl. ¶ 5) and frames the retention as serving "a successful reorganization" (Appl. ¶ 7), yet the only success the Fee compensates is disposition, and the Application nowhere explains why the estate should pay full transaction compensation for partial dispositions that would erode the enterprise the Debtor says it is preserving.

29.     Measured against this estate, the Fee is not modest. The Supplemental Declaration's market comparison assumes "a transaction value of approximately $3,000,000" and benchmarks the Fee against fees investment bankers charge elsewhere. Supp. Decl. ¶ 6. The comparison that matters here is to this creditor body. On the Debtor's own sworn list [ECF No. 2], the $55,000 Fee equals 94.2 percent of the $58,374.01 in scheduled non-insider trade claims (excluding the Debtor's own state court defense counsel), 57.5 percent of all scheduled non-insider unsecured claims other than TruckCo's, and 4.6 times the largest single scheduled trade claim. The Application identifies nothing that the Fee would add to this estate; it identifies only what the fee would cost it.

30.     Finally, the sole bidder condition, if it were operative, would not make the structure reasonable. Under paragraph 2(b) of the Supplemental Declaration, the Fee "shall not

be payable if TruckCo, LLC, Russell Mathews, or Signal Management, Inc. is the sole bidder and successful purchaser of either the Debtor's stock or assets." The condition is conjunctive. It excludes payment only where a named party is both the sole bidder and the purchaser; the appearance of any second bidder, of any kind, restores the Fee in full regardless of who ultimately purchases. And the condition turns the professional's compensation on the identity of the purchaser, naming the plaintiff in the State Court Action, the original buyer under the SPA, and a respondent in the related adversary proceeding. Whatever its intent, the economic effect of the structure is to compensate the creation of an alternative to the transaction that is the subject of the State Court Action, in which partial summary judgment on the seller's failure to close has already been entered and the election of remedies has been expressly reserved. Whatever the merits of pursuing an alternative transaction may someday prove to be, the estate should not finance that pursuit through a success fee, and no such fee can be measured for reasonableness before any transaction exists.

## THE APPLICATION IS PREMATURE

31.     The docket supplies the sequence. The compensation structure was signed on the Petition Date, before any disclosure existed in this case. The Application was filed on July 7, six days before the Debtor's schedules were filed on their extended July 13 deadline. The section 341 meeting followed on July 20. The Supplemental Declaration, describing an investment banking scope that includes "establishing and populating a data room with relevant materials" and "advertising the sale," followed on July 21. Verified asset disclosures in the related adversary proceeding are due July 27. And compliance with the state court's April 16, 2026 order compelling production, including the Debtor's QuickBooks accounting records, remains incomplete, as identified in the plaintiffs' May 6, 2026 notice.

32.     The Application inverts the sequence that disclosure practice exists to protect. A data room cannot responsibly be populated, and a proposed sale cannot be qualified, from records the Debtor has not finished disclosing to this Court and has not produced under an outstanding state court order. On the present record, prospective purchasers would receive the Debtor's financial records before the compelled discovery is honored and before the Debtor's own court ordered disclosures in this case are complete.

33.     Prematurity also disposes of the reasonableness inquiry. There is no sale motion, no proposed structure, no identified property, no marketing timeline, and no bidding procedure against which a transaction fee could be evaluated. The Supplemental Declaration concedes the point: the Fee "is not being pre-approved and remains subject to court approval." Supp. Decl. ¶ 2(a). The tendered order nonetheless pre-approves it. The proper time to seek transaction compensation is after a transaction is proposed, on a record, through the fee application mechanism the tendered order itself preserves in paragraph 5. The proposed order attached as Exhibit A holds the Application to its own concession and nothing more.

**THE APPLICANT HAS NOT SHOWN WHAT ESTATE PROPERTY WOULD BE SOLD OR WHAT WOULD INURE TO THE ESTATE**

34.     The Fee matures in part on "a sale of the equity of the Company." The Debtor's own filings state that the equity of the Company is held by the Trust (200 shares) and by Brett Vogeler (66 shares) [ECF Nos. 5, 6], and equity interests in the Debtor are not property of this estate under 11 U.S.C. § 541. The estate holds no equity of the Company to sell, and the inclusion of that trigger confirms that the Fee term was not drawn against this estate.

35.     As to "a sale of the assets," the Application does not identify which assets, whether any contemplated disposition would be of the enterprise or of its parts, what consideration would reach creditors, or how a $55,000 fee would leave the estate better off than

it stands today. This Court has addressed the analogous question. In *In re Iuliano*, No. 8:09-bk-04904-CED (Bankr. M.D. Fla. Dec. 28, 2010), the Court held that "a mere possibility of a benefit inuring to the estate, without any evidence of a proposed sale, is not a sufficient basis" for the relief the movant sought, and observed that "in the absence of a proposed sale ... there would be no purpose served" in granting it. The Court did not deny that relief outright at the first hearing; it allowed the movant a defined period, sixty days, to seek approval of a sale that would benefit the estate, and denied the motion when the period expired without a proposed sale. The same measured course is available here, and is what the Objectors propose.

36.    On this record the Fee cannot be found "reasonably likely to benefit the debtor's estate" or "necessary to the administration of the case," because the Application does not say what the Fee would accomplish, for which property, or for whose account. 11 U.S.C. § 330(a)(4)(A)(ii). The burden has not been carried, and the Fee should not be approved on this Application.

## SUMMARY AND RELIEF REQUESTED

To summarize, the Objectors submit that:

A.  The order tendered with the Application conforms neither to the engagement agreement nor to the Supplemental Declaration, and cannot be entered as submitted;

B.  The Deferred Restructuring Fee is unbounded on its face and, as structured, is not reasonable under 11 U.S.C. § 328(a);

C.  The Application is premature, because no sale, structure, or property has been identified and the Debtor's disclosures, in this case and under an outstanding state court order, are incomplete; and

D.   The applicant has not carried its burden to show that the Fee is reasonably likely to benefit the estate or is necessary to the administration of the case.

WHEREFORE, the Objectors respectfully request that the Court enter an order, substantially in the form attached as Exhibit A: (a) sustaining this Objection; (b) declining to enter the order tendered with the Application; (c) approving the retention of Archit Shah of Cadence Consulting Services LLC, effective as of the Petition Date, solely to perform the core services enumerated in Exhibit A, Part A of the Agreement, at $300.00 per hour plus reasonable expenses, subject to the fee application requirement stated in paragraph 5 of the tendered order; (d) disapproving the Deferred Restructuring Fee, without prejudice to a separate application under 11 U.S.C. §§ 328(a) and 330, supported by a written amendment signed by both parties, filed after a motion to sell property of the estate, if any, is filed and heard; (e) providing that, at a minimum, any deferred or transaction based fee hereafter sought shall be conditioned on the closing of a sale of all or substantially all of the estate's assets, shall exclude partial, piecemeal, and ordinary course dispositions and plan confirmation standing alone, and shall conform to the acknowledgments in paragraphs 2(a) and 2(b) of the Supplemental Declaration; (f) declining to adopt the authority language of paragraph 3 of the tendered order and providing that the CRO's authority is as set forth in the Agreement, including Exhibit B thereto; (g) providing that nothing in the order authorizes any sale, marketing, or disposition of any property, determines what property constitutes property of the estate or may be sold, or determines, affects, or impairs any claim, interest, right, or remedy of any party; (h) setting the Application for hearing; and (i) granting such other relief as is just.

**RESERVATION OF RIGHTS**

Nothing in this Objection consents to any sale, marketing process, or disposition of any property of the Debtor or of any other person, or to any particular treatment, valuation, or characterization of any claim or interest. The state court has expressly reserved the election of remedies in the State Court Action, no election has occurred, and all remedies remain reserved. The nature and characterization of the Objectors' claims and interests remain unresolved and are unaffected by this Objection. The Objectors reserve all rights, claims, objections, defenses, and remedies, including in the related adversary proceeding, and do not consent to the entry of final orders or judgments by this Court on any matter as to which such consent is required. *See Stern v. Marshall*, 564 U.S. 462 (2011).

Dated: July 23, 2026

Respectfully submitted,

/s/ Scott A. Stichter
Scott A. Stichter
Florida Bar No. 0710679
STICHTER, RIEDEL, BLAIN & POSTLER, P.A.
110 E. Madison Street, Suite 200
Tampa, Florida 33602
Telephone: (813) 229-0144
sstichter@srbp.com
Counsel for TruckCo, LLC and Signal
Management Group, Inc.

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on July 23, 2026, a true and correct copy of the foregoing was served by electronic transmission through the Court's CM/ECF system upon all parties registered to receive electronic notice, including counsel for the Debtor, the Office of the United States Trustee, and Michael C. Markham, the Subchapter V Trustee, and by first class U.S. Mail upon

Cadence Consulting Services LLC, Attn: Archit Shah, 11858 Aurelio Lane, Orlando, Florida

32827, and upon the parties on the attached service list.

/s/ Scott A. Stichter
Scott A. Stichter
Florida Bar No. 0710679

**EXHIBIT A**

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION
www.flmb.uscourts.gov

In re:

                                              Subchapter V, Chapter 11

RITCHEY'S TRUCK REPAIR, INC.,

                                              Case No. 8:26-bk-04988-CED

      Debtor.

_____/

**OBJECTION OF TRUCKCO, LLC AND SIGNAL MANAGEMENT
GROUP, INC. TO DEBTOR'S APPLICATION TO EMPLOY AND
RETAIN ARCHIT SHAH OF CADENCE CONSULTING SERVICES LLC
AS CHIEF RESTRUCTURING OFFICER, AND REQUEST FOR HEARING**

THIS CASE came before the Court for hearing on _____, 2026, upon the Debtor's

Application, Pursuant to Sections 105(a) and 363 of the Bankruptcy Code, for Authorization to

Employ and Retain Archit Shah of Cadence Consulting Services LLC as Chief Restructuring

Officer, Effective as of the Petition Date [ECF No. 53] (the "Application"), the Supplemental

Declaration of Archit Shah [ECF No. 71], and the Objection of TruckCo, LLC and Signal

Management Group, Inc. [ECF No. ___] (the "Objection"). The Court, having considered the

Application, the declarations, the Objection, the record, and the arguments of counsel, and being

otherwise fully advised, it is

      **ORDERED that:**

1.      The Application is GRANTED IN PART and DENIED IN PART as set forth in this Order. The Objection is SUSTAINED to the extent set forth in this Order.

2.      The Debtor is authorized to retain Archit Shah of Cadence Consulting Services LLC as Chief Restructuring Officer, effective as of the Petition Date, solely to perform the core services enumerated in Exhibit A, Part A of the engagement agreement dated June 10, 2026 (the "Agreement"), at the rate of $300.00 per hour plus reimbursement of reasonable out of pocket expenses.

3.      All compensation of the CRO shall be subject to any order of this Court governing procedures for interim compensation of professionals and to the filing of a final fee application.

4.      The $55,000 Deferred Restructuring Fee described in the Agreement and the Application is NOT APPROVED. This disapproval is without prejudice to a separate application for transaction based compensation under 11 U.S.C. §§ 328(a) and 330, supported by a written amendment to the Agreement signed by both parties, filed after a motion to sell property of the estate, if any, has been filed and heard.

5.      Any deferred or transaction based fee hereafter sought shall, at a minimum: (a) be conditioned upon the closing of a sale of all or substantially all of the assets of the estate; (b) exclude partial, piecemeal, and ordinary course dispositions and plan confirmation standing alone; and (c) conform to the acknowledgments in paragraphs 2(a) and 2(b) of the Supplemental Declaration.

6.      Paragraph 3 of the order tendered with the Application is not adopted. The CRO's authority is as set forth in the Agreement, including the Authority Matrix at Exhibit B thereto,

and nothing in this Order confers authority upon the CRO to sell, or to bind the Debtor to sell, any property.

7.      Nothing in this Order (a) authorizes any sale, marketing, or other disposition of any property of the Debtor or of any other person; (b) determines what property constitutes property of the estate or may be sold; or (c) determines, affects, or impairs any claim, interest, right, or remedy of any party, including the election of remedies expressly reserved in the action pending in the Circuit Court for the Tenth Judicial Circuit, Polk County, Florida, Case No. 2025-CA-001921.

8.      To the extent of any inconsistency between the Agreement, the Application, and this Order, this Order governs.

9.      The Court retains jurisdiction to hear and determine all matters arising from or relating to the interpretation, implementation, and enforcement of this Order.

(Counsel for the Objectors is directed to serve a copy of this Order on interested parties who do not receive service by CM/ECF and to file a proof of service within three days of entry of this Order.)